Clarence MERRITTE and Calvin Merritte, Appellants,

v.

STATE of Indiana, Appellee.

No. 381S81.

Supreme Court of Indiana.

Aug. 17, 1982.

Maureen E. Minnemeyer, John R. Politan, Indianapolis, for Calvin Merritte.

Wendell W. Mayer, Indianapolis, for Clarence Merritte.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant Calvin Merritte was charged by way of information with three counts each for the crimes of Confinement, Rape, and Robbery. He was found guilty by a jury on all nine counts.

Appellant Clarence Merritte was charged by way of information with two counts each for the crimes of Confinement, Rape, and Robbery. He was found guilty by the jury on all six counts. Both appellants were sentenced accordingly.

On the night of December 30, 1979, one R.I. was warming up her boyfriend's car in the parking lot of the Nite Flite disco club in Indianapolis when she was approached by

two men who forced their way into the car at gunpoint. She was driven by the pair to nearby Washington Park, where a blue Oldsmobile with four more men inside pulled up and parked behind her and her abductors. She testified she was raped in her car by four of the men. She identified appellant Clarence Merritte as one of the rapists. After the rape she was forced into the blue Oldsmobile which was at that time occupied by appellant Calvin Merritte. She shortly thereafter was ordered back into her own car with some of the men. About thirty minutes later she observed another car and the blue Oldsmobile driven back into the park. A female and one of the assailants were riding in each of the cars. She testified she observed several of the men having sexual intercourse with the other females. She also testified as to the removal of several items belonging to her boyfriend from the car.

S. M. testified she and her companion, K. P., drove to the Nite Flite on the evening of December 30, 1979, and were accosted by two men in the parking lot, one of whom she identified as appellant Calvin Merritte. She testified she was driven in her car by one of the men, while Calvin Merritte drove K. P. in a blue Oldsmobile, and both were taken to Washington Park. S. M. was raped by three of the men. She identified Calvin Merritte as one of the rapists. She also identified Clarence Merritte as one of the men present during the crime. She testified the assailants took her coat and purse with them when the episode was over.

K. P. testified to essentially the same facts as S. M., but she was unable to say Calvin Merritte was the man who drove her back to Washington Park. She testified she was raped by four of the men and identified Calvin Merritte as one of the rapists. At trial she did not identify Clarence Merritte as a participant in the events, but a police officer testified she picked out a photograph of him from a display and identified it as a photograph of one of the men involved. She also testified her coat and some cash were taken from her.

All the victims testified as to the assailants' possession of at least two different handguns during the incident. All testified as to being threatened with harm by some of the assailants at various times during the evening.

■ Both appellants first claim the trial court erred in overruling appellant Calvin Merritte's Motion for Mistrial made during the prosecutor's final argument. Appellants claim the prosecutor impermissibly implied she had personal knowledge of appellant's guilt.

Though the judge admonished the jury to disregard the comment, appellants assert they were placed in a position of "grave peril" to which they should not have been subjected and from which they could not be extricated by the mere giving of an admonishment. Citing *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843, they conclude the only remedy which could have protected their substantial rights was the granting of a mistrial.

The prosecutor's remarks challenged as improper were as follows:

"But I'm not asking you as Mr. Baratz [defense counsel] would have you believe because this horrible crime has been committed that somebody has got to pay for it. That's not my job. *I don't have to be here in court if I don't believe these men are guilty. It's my decision whether to take somebody to trial or not, and I'm here."* (Emphasis added.)

Appellants cite several authorities to the effect that a prosecutor commits reversible error in asserting to the jury his personal belief in the guilt of the accused.

The test set out in *Maldonado, supra*, for use in these situations requires a multi-step procedure. The first of these steps is described as follows:

"1. The Court first determines that the prosecutor engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. See *Swope v. State*, (1975) [263 Ind. 148], 325 N.E.2d

193." *Maldonado, supra*, 265 Ind. at 498, 355 N.E.2d at 848.

The *Code of Professional Responsibility*, DR 7–106(C) provides:

"In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

Appellant cites this Disciplinary Rule as support for his argument the prosecutor committed misconduct here and thus the first step of the test laid out in the *Maldonado* case, he contends, is satisfied.

In the *Swope* case, cited in *Maldonado, supra*, this Court faced the same question and there stated:

"The prosecutor's statement of opinion must be considered *in the context of the argument as a whole*. In this instance, the prosecutor has presented his version of all the evidence and immediately explained the reason that he was convinced appellant was guilty: 'The evidence presented here is so convincing.' This statement adequately explained the source of the prosecutor's opinion and dispelled any possibility of the jury's assuming superior knowledge from the statement, 'We are close to this situation,' which otherwise would have been fatally improper." (Emphasis added.) *Swope, supra*, at 155, 325 N.E.2d at 196.

Viewing the prosecutor's argument as a whole in this case, we find the challenged statement was based on the prosecutor's analysis of the evidence. It was not intended as, nor could it reasonably be taken to be, an inference the prosecutor had some special knowledge unrevealed to the jury that pointed more decisively to appellants' guilt. Prior to the making of the statement the prosecutor had summarized the evidence adduced against appellants and the challenged statement was no more than a statement of her conclusions based on the

evidence adduced at the trial. There was no error in this regard, as the prosecutor was operating within the rule in *Swope, supra*. Thus the rest of the *Maldonado* analysis is unnecessary.

■ Moreover, we have held under the *Maldonado* test whether or not the defendant is placed in a position of "grave peril" is measured by assessing the probable persuasive effect of the misconduct on the jury. *Rock v. State*, (1979) Ind., 388 N.E.2d 533; *Maldonado, supra*. In the case at bar, in light of the quantum of evidence against appellants, we do not believe the jury's decision could have been influenced by the prosecutor's comment. *See, Morgan v. State*, (1981) Ind., 419 N.E.2d 964. Thus, even assuming *arguendo* the prosecutor's comment was improper, there is no cause for reversal in this case.

■ Appellants claim the trial court erred in not "impos[ing] the necessary sanctions and rulings" against the State when the Stated failed to disclose corrections made in the transcript of a statement by State's witness James Jenkins. Jenkins was a participant in the crimes. As part of a plea bargain agreement he testified against appellants at trial. He had made an oral statement to police on April 10, 1980. The corrected transcript of the statement was supplied to defense counsel pursuant to discovery request on or before June 20, 1980. On October 10, 1980, the prosecutor interviewed witness Jenkins, at which time he made some alterations in the story he had told earlier. At trial on October 14, Jenkins testified as to the events in question and indeed made the changes in his story he said he would make when interviewed by the prosecutor four days earlier. Defense counsel moved to strike all of his testimony after it was given and also moved for a mistrial on the grounds the State had failed to comply with the court's discovery order and Marion Superior Court Rule Three when it failed to disclose the fact and the nature of the changes in Jenkins's statement. The court denied both motions.

Appellants contend even absent a reduction to writing of appellants' alterations in his prior statement, the State was compelled to inform appellants of these changes. Appellants cite *Antrobus v. State*, (1970) 253 Ind. 420, 254 N.E.2d 873 in support of this argument.

*Antrobus, supra*, provides where "[a] substantially verbatim transcript of the statements made by the witness prior to trial is shown to probably be within the control of the prosecution . . . ." *Id.* at 427, 254 N.E.2d at 876, the prosecutor is compelled to release the statement to the defense.

In *Washington v. State*, (1980) Ind, 402 N.E.2d 1244, we rejected the argument now presented to us by appellants. In holding there was no error in not disclosing to the defense the oral statements of witnesses that were not reduced to writing, we observed, "Such a rule would prove unworkable and overly burdensome." *Id.* 402 N.E.2d at 1248. We are not persuaded to change that rule in this case. The State alleged by affidavit no written notes of the October 10 interview with Jenkins were made, and thus the rule in *Antrobus, supra*, is not invoked. We hold there was no error in denying appellants' motions.

Next appellants argue the evidence is insufficient to sustain the convictions. They point to certain inconsistencies in the testimony of the victims in support of their arguments.

As we have stated many times before, on sufficiency of evidence questions, we do not reweigh the evidence nor judge the credibility of witnesses. *Sloan v. State*, (1980) Ind., 408 N.E.2d 1264; *Wofford v. State*, (1979) Ind., 394 N.E.2d 100; *Coonan v. State*, (1978) 269 Ind. 578, 382 N.E.2d 157.

■ There was ample testimony from the victims connecting appellants with the crimes. Though there were inconsistencies in the victims' testimony, it was for the jury to resolve those inconsistencies. *Sloan, supra; Royston v. State*, (1979) Ind., 397 N.E.2d 285. The fact the jury resolved those inconsistencies against appellants is no cause for reversal. The testimony of

James Jenkins also served to provide the jury with further evidence of appellants' involvement in the crimes of which each was convicted.

Appellants fail to recognize the impact of I.C. § 35-41-2-4 [Burns 1979 Repl.] in this case. The statute provides in relevant part: "A person who knowingly aids, induces, or causes another person to commit an offense commits that offense . . . ." Under the accessory liability theory, it is of course not necessary that the evidence show Calvin Merritte raped, robbed, and confined all three victims, nor that Clarence Merritte raped, robbed, and confined S. M. and K. P. The evidence adduced is sufficient to show their liability for all the offenses for which they were convicted as either principals or accessories with respect to each victim.

In a related argument appellant Clarence Merritte argues the trial court erred in denying his Motion for Judgment on the Evidence. In *Page v. State*, (1980) Ind., 410 N.E.2d 1304, 1306–07, we stated: "[A] judgment on the evidence is appropriate only where there is an absence of evidence on some essential element or if the evidence is without conflict and is susceptible to but one inference which inference is in favor of the accused." In view of the accessory liability theory as noted above, the test as stated in *Page, supra*, is not satisfied. There was no error in denying appellant Clarence Merritte's motion.

Appellant Clarence Merritte raises several issues with respect to the giving of instructions. He claims the trial court erred in refusing his Tendered Instructions 1, 2, and 6. The record shows, however, the subject matter of these tendered instructions was adequately covered by the instructions given, including Preliminary Instruction 1 and Final Instructions 4, 5, 14, 16, 17, 20, 21, and 22. It is not error for the trial court to refuse a tendered instruction if the subject matter of the instruction has been adequately covered by other instructions already given. *Cherry v. State*, (1981) Ind., 414 N.E.2d 301; *Norton v. State*, (1980) Ind., 408 N.E.2d 514; *Tolbert v. State*, (1979) Ind., 391 N.E.2d 823. There

was no error in refusing the tendered instructions.

 Appellant Clarence Merritte claims the trial court erred in refusing his Tendered Instruction 4. That instruction reads:

"The Indiana Supreme Court has announced the rule that where the evidence of guilt before the jury is circumstantial, special rules are established for the jury's guidance. It is not enough that the circumstances be consistent with the hypothesis of guilt; they must be of so conclusive a character, and point so surely and unerringly to the guilt of the accused, as to exclude every reasonable hypothesis of innocence."

Appellant's instruction is taken almost verbatim from *Ball v. State*, (1980) Ind. App., 406 N.E.2d 305. However, appellant omitted a word from his quotation of the rule of law stated in that case. The omission changes the meaning of the instruction. In the *Ball* case, the Court of Appeals said: [W]here the evidence of guilt before the jury is *entirely* circumstantial, special rules are established . . . ." (Emphasis added). *Id.* 406 N.E.2d at 308.

Clearly appellant's instruction misstates the law. As taken as a whole it can be read to require the use of the exclusion of every reasonable hypothesis of innocence test when any of the evidence is circumstantial. This Court has made it clear the instruction is appropriate only if all the evidence is circumstantial. *See, e.g., Faught v. State*, (1979) Ind., 390 N.E.2d 1011; *Hitch v. State* (1972) 259 Ind. 1, 284 N.E.2d 783.

It is difficult to see how any of the evidence against appellant Clarence Merritte, given the testimony of the three victims and James Jenkins, can be characterized as circumstantial. Victims R. I. and S. M. and co-perpetrator James Jenkins all testified as to Clarence Merritte's active role in the events. A police officer testified K. P. identified a photograph of Clarence Merritte as a photograph of one of the perpetrators of the crimes. This testimony is direct rather than circumstantial. Thus, the instruction even if properly worded would not apply in this case because the evidence here is not circumstantial. We hold there was no error in refusing to give appellant Clarence Merritte's Tendered Instruction 4.

 Appellant Clarence Merritte claims he was denied the lawful presumption of innocence. There is no merit to this argument. In *Ferguson v. State*, (1980) Ind., 405 N.E.2d 902, this Court held such an argument is not valid when the jury is properly instructed as to the definitions of presumption of innocence, reasonable doubt, and an explanation of the State's burden in overcoming the presumption. The jury received such instruction in Preliminary Instructions 5 and 6, and in Final Instructions 21 and 22. We hold appellant Clarence Merritte was not denied lawful presumption of innocence.

The trial court is in all things affirmed.

All Justices concur.